May it please the court. Confronted with a series of confusing and convoluted regulations that most lawyers in the field of administrative forfeiture can never figure out, Appellant Yubran Mesle made the entirely innocent mistake of filing too much as opposed to too little in asserting his rights to the funds which had been seized from his bank accounts, as a result of his brother, unbeknownst to him, having brought three checks, all of which were NSF and one which was post dated for three weeks later across the border. He was told to file certain paperwork which he complied with and he was told to wait possibly a year before any decision would be made on the case. Then out of the blue he complied with a complaint for forfeiture. He had been told to wait. He had a petition pending before U.S. Customs. He waited. As soon as he realized there was a problem when he was served with the notice of default, he immediately contacted counsel and we immediately filed a claim. Nevertheless, even though the government wasn't prejudiced, even though we had, in our view, meritorious defenses, and even though we had a good faith explanation for why he hadn't filed, responded to the complaint, the district court denied his motion to set aside the Rule 55 Quirk's judgment of default and struck his claim. Counsel, I hate to interrupt, but I'm unclear on the overall standard the district court should have used. In most of our cases we have said the proper standard is good cause in light of the fact that default is appropriate only in extreme circumstances. Judge Hayes relied on franchise holding, which mentioned good cause, but not extreme circumstances. Which applies here? Franchise holding or our usual extreme circumstances standard? I think extreme circumstances applies for the following reasons. First of all, and somewhat not the fault of Judge Hayes, I think this has been somewhat clarified in the Limoge case, which I filed a Rule 28 letter on in this case. And Limoge makes clear that the equitable analysis set forth in the Pioneer case applies in this type of situation. And it's clear the district court never applied the balancing test that is required. In the Limoge case, the court specifically said the district court should explicitly use the Pioneer-Brionis framework for the analysis of excusable neglect. And further, the Limoge court specifically concluded that the district court erred because, among other things, the district court made no finding of bad faith. And that was our situation as well. The case after case from this circuit and other circuits have made clear that default should be set aside except in the most clear situations of willful misconduct, bad faith, and so on. The cases say any doubt should be resolved in favor of setting aside the default. Cases should be decided on the merits whenever possible. Default should be a sanction of last resort, and so on and so forth. And I think that the case that really, if I had to pick one case that I think sets forth the standard, it's this TCI group life insurance, which we cited it for 244.3.691. And in that case, the court makes clear that it's a three-part test. It's whether there was culpable conduct, whether there were meritorious defenses, and whether there was any prejudice to the government. And in determining culpable conduct, the court essentially applies the excusable neglect standard. Now, we're in kind of a weird situation here because the standard for Rule 55 and Rule 60 are essentially the same under this circuit's law. But the law is also clear that it's more liberally applied in a Rule 55 situation, which is where we are or were in this case. In other words, as soon as Mr. Messle received the notice of the Rule 60 motion, he came in and filed a claim. And we moved to set aside the Rule 55 default. There had not been a Rule 60 default entered at that point. And in determining, again, excusable neglect, the circuit lifts that. And the court has said that the reason for the delay is the length of the delay. And this Court has said you look at prejudice, the length of the delay, and the impact on the judicial proceedings, the reasons for the delay, and including whether it was within the reasonable control of the movement and whether the party acted in good faith. And applying that in this case, I mean, what else could this man have done other than actually filing an answer? He, within a day of the money being seized, he calls United States Customs. He knows a customs agent. He says, my money's been seized. What do I do? They say, calm down. We'll contact the customs agent at the border. He'll get a hold of you. He contacts Mr. Messle. He says, calm down. We're going to send you a packet of information, file your petition, and we'll deal with it. We'll take care of this. Mr. Messle gets this morass of documents with all sorts of options, and he has everything. He files a petition. He files a claim. He even files a currency transaction report they send him for the next time he crosses the border, even though he hadn't crossed in this case. He immediately sends it all in. He calls Customs afterwards and says, now, what's going on? What's going on? They say, calm down. We've told you before. It's going to take about a year for this thing to be decided. Then in March, he receives the complaint, and yes, he should have probably gone and seen a lawyer and said, well, what does this mean? Customs has my petition. They said to wait a year, and he didn't. But the fact is that if you look at each of the factors, it's clear that under this circuit's law, he meets the standard for setting aside the default. And in that regard, again, going to the four factors, prejudice. There's absolutely no prejudice to the government. Secondly, the length of the delay. The reality in this case is three-quarters of the delay in this case is due to the government, not Mr. Messle. And let me explain. They file the complaint on March 6th. He receives it a few days later. He has 30 days to respond, in other words, until about April 10th. But the government can't do anything at that point. They have to wait for it to be published. And so the publication date, the first time the government could do anything, was May 23rd. On May 23rd or 24th, do they go in and get a default, a corpse default? No, they wait 18 days until June 10th. They submit their default. It's entered that day. Do they file for Rule 60 default at that point? No, they wait another 38 days for a total of 56 days from the first day they could do something to actually moving for the corpse default. Within 17 days of his receipt of the motion for Rule 60 default, Mr. Messle has a claim on file. So you have 56 days of delay from the government versus 17 days of delay from Mr. Messle. So really, the length of the delay was 75% the government's fault as opposed to Mr. Messle's. The impact on judicial proceedings, there really is no impact. He had a claim on file almost immediately. And the reason for the delay, what could be a clearer reason than the government telling him, send in this paperwork and wait a year. He sends it in. He checks with customs about a month after he sent it in. As we told you, it's going to take about a year. It's clear that he, in fact, met the standards of this court in the, not only in the TCI case, but the Limoge case as well. And additionally, of course, we filed a secondary Rule 28 letter as a result of this case of the United States versus $22,500, which came out of the Sixth Circuit, which explicitly holds that Rule 55 controls in the United States. Now, I'd very briefly like to talk about the issue of meritorious defenses, because I think it's important if the court does rule in our favor and remands the case, Rob, with instructions to permit Mr. Messle to reinstate his claim and to file an answer. We raised three meritorious defenses. I'd like to address one of them in particular, because I think it's very important. Well, two of them, really. First of all, we raised the Eighth Amendment argument and that he was an innocent owner. The district court really didn't reach those, because the district court held that he had no constructive or actual possession of the assets in this case, in other words, including the money in his bank account. It's unclear how the court could get to that point, but we have cited clear authority under both the California, under the UCC, as well as the California Commercial Code, that a person maintains interest in the funds in their account, even if they've written a check on it, until the check is cleared. Essentially, a check is an order to the bank to go ahead and turn over those funds once the check has been cashed. I think it's very important that this court clarify that issue, because otherwise we're going to end up back in the district court and the government is going to bring a motion to strike on the basis that my client has no interest in funds in his own bank account. Secondly, we raised a defense of excessive fines that would have to be further developed in the district court. But most importantly, we raised the meritorious defense that there was no substantial connection between the failure to declare the checks at the border by his brother and the seized funds. I think it's very important that the court reach that if, indeed, the court does remand the case to allow the reinstatement, the claim, and the filing of an answer. Because if there was no substantial connection, there's no case here, basically. And as we made clear, there is no connection between these checks and the funds in the account. The crime or the offense which created civil liability of failing to declare these checks, the funds being in the account didn't make that action any easier or more difficult. It was the action of bringing the checks across the border and not declaring them. And we've cited authority for that. The district court relied on a case called Dean but failed to recognize that in 2001 when CAFR was passed, the statute was specifically modified to take out the language, quote, including a deposit in a financial institution, unquote. So I think it's very important the court address that as well because it may, in fact, resolve the case. I think I'd like to reserve any remaining time for rebuttal, if I might. Thank you, Judge. May it please the Court, Bruce Smith on behalf of Pelley United States. The thing that counsel has not pointed out that's very important is that this underlying case is an asset forfeiture matter. It's a matter in rem. We operate in those cases, those civil judicial forfeiture cases, we operate under Rule G. Rule G provides us with very specific timelines and procedures that we follow. In this particular case, to say that Mr. Messle did everything he could do couldn't be farther from the truth. We sent him a very simple complaint and simple instructions telling him that you have to file your claim in 35 days. 20 days later, you have to file your answer. You should consider, if you do not do that, we can obtain a default and we suggest you get an attorney. Very straightforward. He hung on for 152 days before he responded. And so we ---- Well, what do you think the purpose was? I mean, it requires an intentional failure to be culpable. He did send in a request to have an administrative determination as well, didn't he? Yes, sir. He requested that the case be sent to district court. The case was sent to district court. But also he requested there be an administrative procedure. No. He requested that it go to district court. He asked, when given the choices, do you want to go administratively or go through the district court? He said he checked both. No, he checked one. He sent it on for the judicial finding. He didn't ask for the administrative proceeding? Not to my recollection, no, sir. Which is why it came to the office. Why did he do wrong other than not answer the complaint? Well, he did. That's the definition of default. I mean, he failed to respond. It seems like that when we have nonrepresented litigants in the normal civil context, if this had been a lawyer who had not answered a complaint, it seems to me you're applying the same standard to a lawyer and a pro se litigant because all he did was not answer a complaint. But he had done everything before that to notify the government he was contesting the seizure of his money. And then he doesn't answer the complaint. And that's it. As soon as he gets a default, he brings it up and provides an explanation. So it seems like the rule you would like is that whether you're a pro se or a lawyer, if you don't answer the complaint within 20 days or 30 days or whatever the time period is, if we get a default, you're done because the circumstances as to why don't make any difference because there's nothing on the record to show that the circumstances were comparable. Your Honor, all of us who've been in practice who have dealt with pro ses understand how that works. We have very rigid procedures all over the law of this country. And we all are expected to live up to them until the pro ses arrive. And they we all understand they kind of get to do what they want to do unless we can prove there's some sort of evil activity afoot. But in this case, we can do that. We can say, well, now just a minute, United States, this is a pro se. And we have to give him some latitude. We would give an attorney perhaps the 35 days latitude, a few days here, a few days there, depending upon their circumstances. Again, we have 152 days. And so what we're saying here then is those of you who practice, and this is where the prejudice comes in, beyond just the passage of time. The prejudice comes in where they say, okay, those practitioners, those of you who are dealing with forfeiture law, you have Rule G, all right? Live by Rule G. Unless, of course, a pro se arrives, then, you know, we're just going to do what we're going to do. And that's unfair to the litigants and unfair to anyone who has to live under that code. So you're saying the reasons for which the person didn't answer are irrelevant. No, sir. They absolutely are relevant, but he's yet to come up with one. Well, he has. All he tells us is. He has. He explained to you that he thought he didn't have to answer because of all the stuff he'd done before. He'd had conversations with people, and those facts are not disputed. Well, they are and they aren't. I mean, the facts I submit were richly embellished today before Your Honor, but if you go back and see what record was before the district court, the district court reviewed that record, reviewed the approximately page and a half or two-page declaration. Again, it wasn't embellished quite the way we had it today from Mr. Messle. The district court reviewed those declarations, and the district court made its own finding of what was credible, what's to be believed, and how it's to be weighed, and that's how it was done now. I don't see that. It seems to me the district court concluded by having failed to answer that that was culpable. There wasn't any statement that he really didn't believe he didn't have to answer or he didn't really file a prior claim or he didn't really go to a lawyer as soon as he learned of the fault. None of that's disputed. I don't see where the judge weighed it and said, I think he's lying. Well, Your Honor, your reading of it counts, frankly, more than mine. But my reading of it is that the judge looked at that and did not listen to Mr. Messle's statement that I didn't understand and then looked at the simple instructions that the judge quoted on the face of the notice of complaint, notice of action, and the judge just didn't accept Mr. Messle's representation. That's back to my original statement. All you have to do is not answer that, and the fault should be automatic, and he should not be able to contest it, because if you look at how simple the instructions are and you don't follow them, then we wouldn't have to worry whether you're a pro se or a lawyer, because anybody who read it would know they had to do that. If they don't do it, they're in the fault, and therefore, we don't have to worry whether you're a pro se or a lawyer. No, I see. You have to look at the circumstances in cases. What are the circumstances in this case, then, that would say that his explanation of why he didn't file an answer was not sufficient to overcome the default? Because he didn't tell him. All he can say to us is I didn't understand. He understood the first packet. He understood enough to call people he thought he knew at customs. He understood all the way until the most simple of all documents arrived, giving him specific instructions, suggesting he get a letter, warning him of default, and he just put on the brakes and just stopped and waited until the notice of the default hearing arrived. He points to nothing other than I just didn't understand, as opposed to I didn't understand, so I called a lawyer, or I didn't consult with anybody. It's just everything's turned off. From the date he received that notice, he stops everything, according to what the record is, and we didn't hear from him for 152 days from the day that he received that notice, and it makes him 117 days late. But he's a layperson. He receives packets of papers, and he said he checked off judicial hearing as opposed to administrative hearing. Not really understanding what that was. Would you concede that if we use the extreme circumstances standard that he would be entitled to a merits hearing? No, Your Honor, and all due respect, you know, we take a look at the factors to be considered. In the district court's order, the appellant's opening brief, our brief, appellant's reply brief, everybody cites the same standard under Rule 55C, which is whether the defaulting party engaged in culpable conduct, two, whether the defaulting party has a meritorious defense, and three, whether setting aside the default would prejudice the other party. Everybody cited that standard. Everyone has been, you know, throughout the district court and the appellate process, everybody, all the parties have been citing this until the very last moment on this Limoges case, which doesn't apply. But that's Rule 55C. And I agree with His Honor that you can't just, we can't apply the Rule G in a way that if you're off one day, that's it. We don't want to hear from you. I mean, it's our system of law is that we do want to hear from you. We want to get your answers. He hasn't, Mr. Messle hasn't given us any answers. He hasn't told us why he didn't do it. He just didn't do it because I didn't understand. Well, why is it you always have understood until this one point? Then you didn't understand for 152 days and you didn't do anything about it. And we're not talking about 25 bucks. We're talking about serious money. Well, let's move on to another issue. Okay. On the meritorious defense issue. Yes, ma'am. The opposing counsel said that he owned the money in the C's bank account. And it seems as if Judge Hayes didn't believe him. Under our law, isn't the proper form for testing the veracity of Mr. Messle's assertions at a merits hearing, not a default hearing? Well, what the appellants brought up is UCC code sections, I think maybe some California code sections, saying that when the payor writes a check, the payor, until the cash is checked, payor has option to stop payment on the check. And Mr. Messle didn't do that. He wrote a check, wrote two checks to his brother, three checks, but the two checks we're looking at, wrote two checks to his brother and gave the brother the checks and did nothing about it. The brother was carrying the checks and was going to do what? They're still his. He still has control over it. He can still stop it. It's still his property. But he didn't. He didn't do anything about it. He should have stopped it after you took it? I don't know. Until it's cashed, it's his property, and he can stop the check. It's like when Your Honor pays a bill. You write the check, and the money is with your creditor, and the creditor is going to do with it as they will. The law may be that you can stop the check before the creditor cashes it, but that's just – it's a red herring. It doesn't mean anything here. I don't think – and I don't think the judge – not to interrupt Your Honor, but I don't think that the district court judge hinged when you read through his findings and his order. That wasn't the driving force as to whether or not – he never said, I don't believe you own the account, or I don't believe that you're the same messly on the bank account. It was more out of just disregard that it was not important because no action had been taken to – Well, it's just a question of whether the claim he alleged – if all the facts are true. We – what Judge Nelson says is that the judge doesn't decide the facts at this kind of a hearing. He looks at the claim and says, not that there's – I've evaluated it, decided on the merits, but is it the type of claim that has some merit, if that we can decide? That's all you need at this stage of the proceeding. I appreciate the question. And I submit that the driving force behind Judge Hayes' decision was the lateness in Mr. Messy's response. And that – We can assume it's a meritorious defense. Assume it's – fine. Rule – And you say that it's culpable conduct because it was intentional, which is our requirement. Under those circumstances, we, I think, still submit respectfully, we have to take a look at Rule G. Rule G is the framework for forfeiture. It has to be applied reasonably to the parties. But Rule G doesn't differentiate between people that have meritorious claims and people who do not. Okay. Well, that's fine. Then we can get over that issue. We can assume it's a meritorious claim. And what we're really down to is what you said at the beginning, is this under the standard, which is that we favor getting to the merits of claims, only it's unusual when we don't get to the standards of claims, when we don't get to the merits of claims, and where in order to refuse to set aside a forfeiture, you have to find that culpable conduct, which means intentional conduct, not simply a mistake. So, okay. I mean, that's the issue. I think we all agree on what the issue is. Well, sir, I respectfully submit that the issue is, when we come down to it, are we going to enforce Rule G under reasonable circumstances to this particular litigant, or are we not? Does Rule G have, especially created for asset forfeiture cases, are we going to give that importance? Well, Rule G, in front of, I mean, in light of our law, which is TCA Group was one of the cases, which is the counsel, not counsel, the counsel's party here, Mr. Mesley, must have acted with an intention to take advantage of the opposing party, interfere with the judicial decision-making, or otherwise manipulate the legal process. Now, that's what our case is when we say we did it intentionally. I don't see that Mr. Mesley did any of those things here. But, you know, that's what makes life disagreeable. And I would, you know, that's been a troubling point. Just as Your Honor, the way Your Honor read that is exactly the way I read that. And that becomes troubling, because then you, as a litigant, you wonder, are we always in a situation where not only do I have to prove that he was late, not only do I have to prove the other elements, but do I have to prove there's a motive? Do I have to prove somehow that he thought, and again, he's a pro se, goodness knows what his thought processes are. Even an attorney, is it fair to your plaintiffs to say, well, he may not follow the rules, he may do this, this. But, counsel, you have to show me some sort of a guilty motive. And that can be almost impossible. We have a point. But that does appear to be the law of the circuit. I don't think so. Because then I think we find ourselves without default. I read you a quote, and that quote reflects the law in our circuit. And you are pointing out really why that's not a good rule. I just respectfully submit. I understand, Your Honor, I read the same thing you did, and the thought maybe didn't come as eloquently to me as you, but I look at that. I didn't have a thought. All I did was read. Well, well done. But I look at that, and I just cannot believe that we can only secure a default and sustain it on appeal when I can prove some sort of a guilty, evil motive. I don't think that's true. Well, you know, I read a lot of our cases, and it's hard for me to believe it. But that's the law, and we are bound to follow it. And it may give you a hard job. But on the other hand, you know, the law also says we favor getting to the merits. So somebody's late, and unless it's going to really hurt you, if it hurt you, you could win. But the way it hurts us, and I'm out of time. If I can just one-line it. The way it hurts us, and there are cases, I don't want to hear you read any more of those lines, but I read the same lines you did about, you know, Mr. Smith, the passage of time is not prejudiced. But it is. Passage of time is prejudiced, number one. And that Mr. Dagwali, the man that brought these checks through the port of entry, he passed through November of 2007. That is prejudiced because we're going to eventually someday may have to call witnesses. And number two, the prejudice is, again, when we look at Rule G, we look at these rules, as litigants we have to know they mean something. If they don't mean anything, we lose control of our theater. I think we understand your position. Thank you very much. Thank you. I'd just like to briefly respond to a couple of points. I would do it very briefly. Yes, very briefly. Mr. Smith consistently kept saying all he said was he didn't understand, he didn't understand. That's not all he said. What he said at page 85 of the excerpt from the clerk's record was that he was told that the petition process could take up to a year and to be patient. He also said a month later, I again spoke to U.S. Customs agent Chris Cummings about the situation. He had spoken to Agent McDonald, who was the case agent on the forfeiture, and had made a recommendation on my behalf, and he would continue to speak to Agent McDonald. If any of that wasn't true, you don't think that they would have presented a declaration in district court or two declarations in district court that that wasn't true? They never did. Number two, I don't think it's really significant, but it's so confusing. If you look at page 53 of the excerpt from the record, the initial notice, they tell you you must check box three on the election proceedings form if you ultimately want to go to court. And then at page 63, you go to the form, and you have people that want to file a petition or you have people that want to file a claim. It says, check only one of the following choices, one of the boxes. So you have a pro se here who's saying, well, I want you to consider my petition, but I also want to preserve my right to court. But one says petition, one says court. I can only check one of them. What am I supposed to do? You know, the government keeps talking about strict compliance, and it's very interesting. In the district court, they cited cases and argued strict compliance, strict compliance. Before this court, they haven't. Ironically, the two leading cases that they cite, which is at page 105 of the excerpt of clerk's record, is U.S. versus 5730 out of the Sixth Circuit and U.S. versus 89 firearms out of the Sixth Circuit. Of course, we filed a Rule 28 letter with this new case out of the Sixth Circuit, which clarifies very clearly that it's Rule 55 that controls and not the strict compliance rules. I just out of curiosity, I just want to ask you, did he ask for an administrative procedure also? Pardon me? Did he ask for an administrative? Well, essentially, yes, because he sent in an administrative petition, which has to be decided by customs. In other words, he sent in this whole package. He sent in everything. But he didn't check it off. He checked the third box. He checked only the court box. He checked the third box. I want to have one final point that I think is very important. I mean, if we're talking about being realistic here, the government had four chances to potentially prevent our situation of us being right here today from happening. First of all, I don't really think that's necessary for your argument. The argument is whether it was done in a culpable manner and whether that was intentional under our law. All right. Thank you. Thank you. All right. This case is submitted. The next case for argument is Property ID Corporation v. Greenwich Insurance Company.
judges: Whaley, Nelson D. W., Reinhardt